PEOPLE v SHIPP

Docket No. 100893. Submitted January 11, 1989, at Detroit. Decided
    February 23, 1989.

    David Shipp was convicted by a jury in Detroit Recorder's Court
    of voluntary manslaughter in connection with the death of his
    wife. At trial and over the objection of defense counsel, the
    court, Geraldine Bledsoe Ford, J., permitted the prosecution to
    introduce the written autopsy report prepared by a doctor at
    the Wayne County Medical Examiner's Office by having it read
    into the record. Defendant appealed, claiming the report was
    inadmissable hearsay.

    The Court of Appeals *held:*

    1. The business records exception to the hearsay rule, MRE
    803(6), applies to records of acts, transactions, occurrences or
    events, but not to records of opinions or diagnoses. Thus, error
    requiring a reversal of defendant's conviction resulted from the
    admission of those parts of the autopsy report which indicated
    the medical examiner's opinions and conclusions as to cause of
    death.

    2. The public records and reports exception to the hearsay
    rule, MRE 803(8), applies to reports of objective data observed
    by public agency officials, but not to evaluative or investigative
    reports. Thus, error requiring reversal resulted from the admis-
    sion of those parts of the autopsy report which indicated the
    medical examiner's opinions and conclusions.

    Reversed and remanded for a new trial.

EVIDENCE — HEARSAY — AUTOPSY REPORTS — RULES OF EVIDENCE.
    Hearsay evidence consisting of the opinions and conclusions
    contained in a medical examiner's written autopsy report is not
    admissible under either the business records exception or the
    public records and reports exception to the hearsay rule (MRE
    803[6] and [8]).

*Frank J. Kelley,* Attorney General, *Louis J.*

REFERENCES

Am Jur 2d, Evidence §§ 914 *et seq,* 962 *et seq.*
Admissability under business entry statutes of hospital records in
    criminal case. 69 ALR3d 22.

*Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief of the Criminal Division, Research, Training and Appeals, and *Thomas M. Chambers,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Susan Meinberg Thomas*), for defendant on appeal.

Before: MAHER, P.J., and CYNAR and GRIFFIN, JJ.

GRIFFIN, J. Defendant David Shipp appeals as of right from a jury conviction of voluntary manslaughter arising out of the death of defendant's wife.

The cornerstone of the circumstantial case against the accused was an autopsy report which concluded that the deceased died after attempted strangulation and blunt instrument trauma. Over defendant's objections, the trial court permitted the observations, opinions, and conclusions contained in the autopsy report to be read into evidence.

We hold that the Michigan Rules of Evidence prohibit the admission into evidence of opinions and conclusions contained in an autopsy report. The error which had a substantial impact in resolving the question of the accused's guilt or innocence is not harmless. Accordingly, the conviction is reversed and the case remanded for a new trial.

I

On January 27, 1986, Jacqueline Shipp, wife of defendant, was found dead at the marital residence. The investigating police officers testified that there was no evidence of forced entry into the home and that Mrs. Shipp's body exhibited signs of

scratches and bruises. In a written statement read to the jury by the people, Mr. Shipp admitted to being present at the residence during the time in question, but denied any knowledge or involvement in his wife's death.

Dr. Opas Ratanaproeska of the Wayne County Medical Examiner's Office performed an autopsy of Mrs. Shipp's body. At the time of trial, Dr. Ratanaproeska was living in Gary, Indiana, and was no longer employed by the Wayne County Medical Examiner's Office. The prosecution made no effort to produce Dr. Ratanaproeska at trial.

In lieu of Dr. Ratanaproeska's testimony, the people opted at trial to read into evidence Dr. Ratanaproeska's autopsy report. Defense counsel repeatedly objected to the admission into evidence of Dr. Ratanaproeska's opinions and conclusions but was overruled by Judge Geraldine Bledsoe Ford.

The medical examiner who read the report into evidence admitted to a lack of personal knowledge of the autopsy. In addition, the designated reader, Dr. Haresh Mirchandani, testified that the conclusions contained in the report were entirely those of Dr. Ratanaproeska:

> *Q.* Did you make any other interpretations which were yours, not the doctor who made the examination in your report [sic] on what someone else said?
> *A. I am just reading what his* [Dr. Ratanaproeska's] *conclusions are.*

The autopsy report read into evidence not only contained recorded observations of the body, but also Dr. Ratanaproeska's opinions and conclusions. The opinions and conclusions that death ensued after attempted strangulation and blunt instru-

ment trauma were crucial to the people's circumstantial case.

On appeal, defendant raises several issues. Because we conclude that the autopsy report was inadmissable under the Michigan Rules of Evidence, we do not address the constitutional and other questions raised by defendant.

II

On appeal there is no dispute that the autopsy report was hearsay.[1] At trial and on appeal, the people argue that the autopsy report was admissible as a hearsay exception under the Michigan business records statute. 1961 PA 236; MCL 600.2146; MSA 27A.2146. The statute relied upon by the people states in pertinent part:[2]

[1] The MRE 801(c) definition of hearsay is identical with FRE 801(c): "Hearsay. 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

[2] MCL 600.2146; MSA 27A.2146 reads in its entirety: "Any writing or record whether in the form of an entry in a book or otherwise, made as a memorandum of any act, transaction, occurrence or event shall be admissible in evidence in all trials, hearings, and proceedings, in any cause or suit in any court, or before any officer, arbitrators, or referees, in proof of said act, transaction, occurrence or event if it was made in the regular course of any business and it was the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence or event or within a reasonable time thereafter. All other circumstances of the making of such writing or record including lack of personal knowledge by the entrant or maker, may be shown to affect its weight but not its admissibility. The term 'business' shall include business, profession, occupation and calling of every kind. The lack of an entry regarding any act, transaction, occurrence or event in any writing or record so proved may be received as evidence that no such act, transaction, occurrence or event did, in fact, take place. Any photostatic or photographic reproduction of any such writing or record shall be admissible in evidence in any such trial, hearing or proceeding by order of the court, made within its discretion, upon motion with notice of not less than 4 days. All circumstances of the making of such photostatic or photographic reproduction may be shown upon such trial, hearing or proceeding to affect the weight but not the admissibility of such evidence."

Any writing or record whether in the form of an entry in a book or otherwise, made as a memorandum of any act, transaction, occurrence, or event shall be admissible in evidence in all trials, hearings and proceedings in any cause or suit in any court, or before any officer, arbitrators, or referees, in proof of said act, transaction, occurrence or event if it was made in the regular course of any business and it was the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence or event or within a reasonable time thereafter. [MCL 600.2146; MSA 27A.2146.]

The people rely upon *People v Kirtdoll,* 391 Mich 370; 217 NW2d 37 (1974), for the proposition that hospital records are admissible at a criminal trial. The people in their brief, however, overlook a footnote to *Kirtdoll, supra,* 395-396, n 15, in which the Court stated that "admissibility of the particular entries" of the hospital record was not addressed in the appeal.

In addition, the people fail to note the substantial controversy which existed under the business records statute as to whether or not opinions or diagnoses contained in such records were admissible. The statute on its face does not include opinions or diagnoses but is limited to "any act, transaction, occurrence or event." Case law construing the business records statute was hopelessly in conflict on the question. See *Wade v Bay City,* 57 Mich App 581; 226 NW2d 569 (1975), app dis 394 Mich 755 (1975).

The business records statute and the cases construing it are of interest to this Court from a historical perspective only. On January 5, 1978, the Michigan Supreme Court adopted the Michigan Rules of Evidence (MRE), effective March 1, 1978. The authority for promulgation of the Michigan Rules of Evidence by the Supreme Court is

found in Const 1963, art 6, § 5.[3] These codified evidence rules govern "proceedings in the courts of this state." Statutory rules of evidence "not in conflict" with the Michigan Rules of Evidence survive "until superseded by rule or decision of the Supreme Court." MRE 101.[4]

Although the Michigan Rules of Evidence are patterned after the Federal Rules of Evidence, there are important substantive differences. The Michigan Rules of Evidence as originally proposed would have contained the broad hearsay exceptions of the federal rules. As noted by the drafting committee, many of the federal hearsay exceptions are inconsistent with prior Michigan law. In adopting the Michigan Rules of Evidence, our Supreme Court rejected the committee's recommendations to clone the federal hearsay exceptions.

The more restrictive Michigan rules deviate from the federal rules in defining statements which are not hearsay (Cf. MRE 801[d][1] with FRE 801[d][1][A], [B], [C] and MRE 801[d][2] with FRE 801[d][2]) by omitting several significant federal hearsay exceptions such as "opinions and diagnoses" from business records (Cf. MRE 803[6] with FRE 803[6]), factual findings in government reports (Cf. MRE 803[8] with FRE 803[8]), and the catchall "other exceptions" (Cf. FRE 803[24] with no Michigan counterpart).

Although proposed changes have again been made[5] to conform Michigan practice to the federal

---

[3] Const 1963, art 6, § 5 provides in pertinent part: "The Supreme Court shall by general rules establish, modify, amend and simplify the practice and procedure in all courts of this state."

[4] MRE 101: "These rules govern proceedings in courts of this state to the extent and with the exceptions stated in Rule 1101. A statutory rule of evidence not in conflict with these rules or other rules adopted by the Supreme Court is effective until superseded by rule or decision of the Supreme Court."

[5] Proposed Amendments to the Michigan Rules of Evidence, 66 MSB J 921-924.

rules, our Supreme Court has not acted.

The business records hearsay exception which we must address is not the statute but the rule of evidence, MRE 803(6). Although patterned after its federal counterpart, the Michigan rule omits from its hearsay exception "opinions and diagnoses."[6] The deliberate decision by the Michigan Supreme Court to deviate from the federal rule is interpreted by this Court to firmly exclude "opinions and diagnoses" from the Michigan hearsay exception.

In the present case, the conclusions of Dr. Ratanaproeska of attempted strangulation and blunt force trauma fail to fall within Michigan's business records hearsay exception, MRE 803(6). Such hearsay statements do not report "acts, transactions, occurrences or events" but are rather opinions or conclusions of a medical examiner not subject to cross-examination. We hold that conclu-

---

[6] MRE 803(6): "Records of Regularly Conduction Activity. A memorandum, report, record, or data compilation, in any form, *of acts, transactions, occurrences, or events,* made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the *method or circumstances of preparation indicate lack of trustworthiness.* The term 'business' as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit." (Emphasis added.)

FRE 803(6): "Records of Regularly Conducted Activity. A memorandum, report, record, or data compilation, in any form, *of acts, events, conditions, opinions, or diagnoses,* made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regular practice of that business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term 'business' as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit." (Emphasis added.)

sions and opinions contained in an autopsy report are not admissible under MRE 803(6).

### III

Secondarily, we hold that conclusions and opinions are not admissible under the public records and reports hearsay exception, MRE 803(8). Again Michigan's hearsay exception for public records is narrower than the federal rule.[7] See *Bradbury v Ford Motor Co,* 419 Mich 550; 358 NW2d 550 (1984), *Swartz v Dow Chemical Co,* 414 Mich 433; 326 NW2d 804 (1982), and *Slayton v Michigan Host, Inc,* 144 Mich App 535; 376 NW2d 664 (1985). The Michigan Supreme Court in *Bradbury, supra,* pp 553-554, explained the difference between MRE 803(8) and FRE 803(8):

> The history of MRE 803(8) demonstrates that evaluative and investigative reports are not within the provision excepting from the hearsay rule "matters observed pursuant to duty imposed by law as to which matters there was a duty to report". MRE 803(8) is based on FRE 803(8), and as originally proposed would have included a third category of reports as clause (C):

---

[7] MRE 803(8): "Public Records and Reports. Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, and subject to the limitations of MCL 257.624; MSA 9.2324."

FRE 803(8): "Public Records and Reports. Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, or (C) in civil actions and proceedings and against the Government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness."

* * *

Contrary to the conclusion reached by the Court of Appeals, MRE 803(8)(B) does not allow the admission of investigative reports. Rather, that clause reflects the narrow common-law rule which limits public reports of matters observed by agency officials to reports of objective data observed and reported by these officials.

Although Dr. Ratanaproeska's recorded observations contained in the autopsy report are admissible under MRE 803(8)(B), his conclusions and opinions are not.

The goal of a trial is the search for truth. In furtherance of this objective, cross-examination has been described as "beyond any doubt the greatest legal engine ever invented for the discovery of the truth." 5 Wigmore, Evidence (Chadbourn rev), § 1367, p 32, n 16, quoted with approval in *California v Green,* 399 US 149, 158; 90 S Ct 1930; 26 L Ed 2d 489 (1970).

A hearsay statement by a its very nature is not subject to cross-examination. Trial attorneys often use the rule of thumb that "if it can't be cross-examined—it's hearsay."

Exceptions to the hearsay rule are generally based upon the trustworthiness and reliability of a hearsay statement under the circumstances. Care, however, must be exercised in creating or expanding hearsay exceptions since the right of cross-examination will be relinquished.

Defendant was denied his right to cross-examine the conclusions and opinions of Dr. Ratanaproeska. Whether or not such a denial constitutes a violation of defendant's right to confrontation as guaranteed by the United States[8] and Michigan[9] Consti-

---

[8] US Const, Am VI.

[9] Const 1963, art 1, § 20.

tutions need not be addressed by this Court in view of our disposition under the Michigan Rules of Evidence.

IV

The people argue that even if error was committed by the reading of the autopsy report into evidence,[10] the error was harmless. We disagree.

Harmless, technical errors which do not bear upon the guilt or innocence of an accused are not grounds for reversal. Such is the policy of the State of Michigan as reflected by our statutes[11] and court rules.[12] Consistent with our Constitution, such public policy objections shall be implemented by our courts.

In the instant case, the hearsay conclusions and opinions of Dr. Ratanaproeska were a crucial part of the circumstantial case against defendant. The conclusions and opinions of blunt instrument trauma and attempted strangulation had a substantial effect on the resolution of the ultimate issue of the guilt or innocence of the accused. The

[10] Our analysis and holding would be the same had the report been admitted as an exhibit rather than read.

[11] MCL 796.26; MSA 28.1096: "No judgment or verdict shall be set aside or reversed or a new trial be granted by any court of this state in any criminal case, on the ground of misdirection of the jury, or the improper admission or rejection of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice."

[12] MCR 2.613(A): "Harmless Error. An error in the admission or the exclusion of evidence, an error in a ruling or order, or an error or defect in anything done or omitted by the court or by the parties is not ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take this action appears to the court inconsistent with substantial justice."

MRE 103(a): "Effect of Erroneous Ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected . . . ."

prejudice to defendant was significant. Under such circumstances, the error cannot be held to be harmless.

Defendant's conviction is hereby reversed and the case remanded for a new trial.