PEOPLE v BELL

PEOPLE v PAIGE

Docket Nos. 92339, 93378. Submitted January 6, 1989, at Detroit.
    Decided May 3, 1989.

Dalton Bell and Gregory Paige were convicted of conspiracy to
    burn insured property and of burning insured property follow-
    ing a joint jury trial in Detroit Recorder's Court and were
    sentenced, Beverley Anne Jasper, J. The prosecutor's theory at
    trial was that Bell hired a third person to burn a house owned
    by Paige so that insurance monies could be fraudulently ob-
    tained and that the motive of both defendants was to profit
    financially from the fire. The prosecutor also theorized that
    Paige entered into a conspiracy to set the July 28, 1983, fire as
    part of a scheme to defraud his insurer, that, as a result of that
    scheme, Paige's house experienced five fires between July 28,
    1983, and December 17, 1984, and that two other fires occurred
    at other properties owned by Paige. Defendants appealed, chal-
    lenging the admission of evidence of other fire losses suffered
    by defendant Paige subsequent to the fire at issue here.

    The Court of Appeals *held:*

    1. The evidence of the subsequent fires, whether or not
    resulting in an insurance claim by defendant Paige, should not
    have been admitted because the fact that the fires occurred and
    insurance claims may have been made does not translate into a
    scheme to defraud the insurer. Absent the admission of this
    evidence, it is reasonably possible that at least one juror would
    have found a reasonable doubt as to whether defendant Paige
    had an intent to defraud his insurer at the time of the July 28,
    1983, fire. Defendant Paige's two convictions are reversed.

    2. In view of the nature of the conspiracy charge in this case,
    requiring proof of a mutual agreement to do or accomplish an
    unlawful act, the admission of the evidence of the subsequent

REFERENCES

Am Jur 2d, Arson and Related Offenses § 58; Evidence §§ 320 *et
    seq.*, 962 *et seq.*

Admissibility, in prosecution for criminal burning of property, or
    for maintaining fire hazard, of evidence of other fires. 87 ALR2d
    891.

fires also resulted in error as to defendant Bell. Paige's intent and Bell's acts are so intimately linked that they cannot be easily separated in the presence of the wrongfully admitted evidence.

3. The matter is remanded for a new trial. Evidence of a fire incident report for the November 18, 1984, fire at Paige's house in which the cause of the fire was suspected to be arson is not to be admitted at the new trial. The investigative information in the report is not admissible under MRE 803(8)(B) under any circumstances, and there is no basis for admitting the fire incident report to establish any fact of consequence to the charges against the defendants.

Reversed and remanded for a new trial.

1. CRIMINAL LAW — EVIDENCE — SIMILAR ACTS — ADMISSIBILITY.

Evidence of a criminal defendant's similar criminal acts may be admitted where (1) there is substantial evidence that the defendant actually perpetrated the similar act sought to be introduced; (2) some special quality or circumstance of the act tends to prove the defendant's identity, or the motive, intent, absence of mistake or accident, scheme, plan, or system in doing the act, or opportunity, preparation, or knowledge; (3) one or more of those factors is material to the determination of the defendant's guilt of the charged offense, i.e., the proposed evidence is pertinent to a proposition in issue in the case; and (4) the probative value of the evidence substantially outweighs the danger of unfair prejudice (MRE 404[b]).

2. ARSON — CONSPIRACY — EVIDENCE.

Evidence of subsequent fires involving property owned by one of the defendants should not have been admitted in a trial where the defendants were charged with conspiracy, burning a dwelling house, and burning insured property and there was no showing that there was any intent in the subsequent fires to defraud the insurer or that the defendants had any role in setting or causing the setting of the fires; the fact that the fires occurred and insurance claims may have been made does not translate into a scheme to defraud the insurer.

3. ARSON — EVIDENCE — FIRE INCIDENT REPORTS — HEARSAY.

A fire incident report on a subsequent fire, prepared by a fire fighter to provide information, including the suspected cause of the fire, to a special arson unit consisting of police officers and fire fighters who investigate suspicious fires is inadmissible in a trial where the charges include conspiracy and burning of insured property; the report is not admissible under the public records exception to the hearsay rule (MRE 803[8][B]).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief of the Criminal Division, Research, Training and Appeals, and *Andrea L. Solak* and *Brian D. Marzec,* Assistant Prosecuting Attorneys, for the people.

*Carl Ziemba,* for Dalton Bell.

State Appellate Defender (by *Susan J. Smith*), for Gregory Paige.

Before: GILLIS, P.J., and SHEPHERD and SAWYER, JJ.

PER CURIAM. Defendants Gregory Paige and Dalton Bell were charged with conspiracy to burn a dwelling house, MCL 750.157a; MSA 28.354(1), burning a dwelling house, MCL 750.72; MSA 28.267, conspiracy to burn insured property, MCL 750.157a; MSA 28.354(1), and burning of insured property, MCL 750.75; MSA 28.270. Following a joint jury trial, defendants were convicted of conspiracy to burn insured property and burning insured property. Defendant Paige was sentenced to concurrent terms of 2½ to 10 years imprisonment. Defendant Bell was sentenced to concurrent terms of two to ten years imprisonment. Both defendants appeal as of right challenging the admission of evidence of other fires under MRE 404(b). We reverse.

I

On July 28, 1983, a house owned by defendant Paige was damaged by fire. The prosecutor's key witness, Al Meredith, Jr., admitted that he set the fire in exchange for defendant Bell's agreement to

pay him $300. Meredith was a full-time salesman ("fire chaser") in the fire repair business and an admitted arsonist of about fifty houses. He testified in the instant case pursuant to a cooperation agreement with the prosecutor.

Meredith testified that he first met defendant Bell in 1982 through their work. Bell, who was also a "fire chaser," approached Meredith in July, 1983, regarding defendant Paige's house. Meredith agreed to burn the house for $300. Bell gave Meredith $80 in advance. Meredith, his fiancee Meta Carden Smith, and Bell then drove to a store where Meredith purchased rubbing alcohol to use as an accelerant.

Meredith and Bell then met with Paige at Paige's house. After examining the house, Meredith decided that the bedroom would be the best place to set the fire. He also asked Bell what insurance company would be involved so that he could decide whether to increase his fee. Since Paige's insurer was not very good in making payments, Meredith did not change his $300 fee.

All three men then left Paige's house. Meredith rejoined his fiancee, who then drove around the block a few times before returning him to Paige's house. Meredith went inside the house alone. He poured rubbing alcohol on the bed, set it on fire, and left.

The fire was initially investigated by Detroit fire fighters. They found very little furniture inside Paige's house, although the house was not abandoned. The bed was determined to be the origin of the fire. No trace of an accelerant was found. The charges against defendants arose after Meredith was arrested for arson arising out of another incident and, pursuant to a cooperation agreement, provided information on other crimes to members of a special arson unit composed of police

officers and fire fighters. Although there were some inconsistencies, Meredith's testimony regarding the July 28, 1983, fire was corroborated by the testimony of his fiancee, who was given immunity from prosecution in exchange for her testimony.

The prosecutor's theory at trial was that Bell hired Meredith to burn the house so that insurance monies could be fraudulently obtained and that the motive of both defendants was to profit financially from the fire. With regard to defendant Paige, the prosecutor theorized that Paige entered into a conspiracy to set the July 28, 1983, fire as part of a scheme to defraud his insurer and, as a result of that scheme, Paige's house experienced five fires between July 28, 1983, and December 17, 1984, and that two other fires occurred at other properties owned by Paige. By contrast, defendant Paige's theory was that he used the insurance proceeds from the July 28, 1983, fire to repair the house. Both defendants argue that Meredith's testimony lacked credibility.

## II

On appeal, both defendants challenge the trial court's decision to allow evidence of other fire losses suffered by Paige subsequent to July 28, 1983. Specifically, the prosecutor introduced evidence of four fires at the Paige house: (1) a July 30, 1983, fire (reported on a fire incident report as a suspected fire caused by children and matches) for which no insurance claim was made; (2) an April 15, 1984, fire for which defendant Paige made a claim and received insurance proceeds of over $11,000; (3) a November 18, 1984, fire (reported on a fire incident report as a suspected arson) for which no insurance claim was made; and (4) a December 17, 1984, fire for which defen-

dant Paige made a claim and received insurance proceeds of over $11,000. In addition, the prosecutor introduced evidence of two other fire losses suffered by defendant Paige at other properties on September 14, 1984, and June 15, 1985, for which Paige made claims and received insurance proceeds totalling about $20,000.

The trial court ruled that the evidence of any fires where defendant Paige made an insurance claim was admissible as similar acts evidence for the purpose of showing defendants' motive. Although MRE 404(b) allows evidence of a defendant's similar subsequent acts to prove motive, certain safeguards must be met:

> (1) there must be substantial evidence that the defendant actually perpetrated the bad act sought to be introduced; (2) there must be some special quality or circumstance of the bad act tending to prove the defendant's identity or the motive, intent, absence of mistake or accident, scheme, plan or system in doing the act and, in light of the slightly different language of MRE 404(b) we add, opportunity, preparation and knowledge; (3) one or more of these factors must be material to the determination of the defendant's guilt of the charged offense and (4) the probative value of the evidence sought to be introduced must not be substantially outweighed by the danger of unfair prejudice. [*People v Golochowicz,* 413 Mich 298, 309; 319 NW2d 518 (1982).]

One of the first determinations that the trial court should make pertains to the third prong of the *Golochowicz* test, that is, whether the proposed evidence pertains to a proposition "in issue" in the case. *People v Devine,* 168 Mich App 56, 60; 423 NW2d 594 (1988), lv den 431 Mich 879 (1988). Here, the proposition in issue was defendant Paige's motive for submitting the insurance claim

for the July 28, 1983, fire. The prosecutor proffered the evidence to show that Paige was acting pursuant to a scheme to repeatedly defraud his insurer.

Viewed in this context, we conclude that the first two prongs of the *Golochowicz* test were not satisfied. Initially, we note that there was a similarity between the July 28, 1983, incident and the subsequent fires to the extent that Paige submitted insurance claims. However, submitting an insurance claim does not establish the "special quality or circumstance" linking the act to the crime charged required under the second prong of the *Golochowicz* test. To establish this link, some similarity between the act and the crime charged must be shown. *People v Goddard,* 429 Mich 505, 515-517; 418 NW2d 881 (1988).

Here, the two crimes charged which ultimately resulted in the convictions (conspiracy and burning of insured property) required proof of a criminal conspiracy, meaning a mutual understanding or agreement between two or more persons, express or implied, to do or accomplish a criminal or unlawful act, *People v Bettistea,* 173 Mich App 106, 117; 434 NW2d 138 (1988), and proof of an intent to injure and defraud the insurer, MCL 750.75; MSA 28.270. There was no showing here that defendant Paige intended to defraud the insurer in any of his subsequent fires or had any role in setting or causing the setting of the fires. Indeed, there was no substantial evidence that any of the subsequent fires for which defendant Paige made insurance claims were caused by a bad act, i.e., arson. The mere act of making an insurance claim for a fire loss does not translate into an intent to defraud or arson. Of the four subsequent fires occurring at the Paige house, there is only one where there was evidence of a "suspected arson." The evidence establishing this fact was a

fire incident report which, for reasons to be discussed in section III of this opinion, should not have been admitted. Even if the report were considered, there was no evidence linking defendant Paige to that arson and no insurance claim was submitted.

Since we conclude that the trial court erred in finding that the first two prongs of *Golochowicz* were satisfied, we need not decide whether the trial court abused its discretion in balancing the probative value of the evidence against the danger of unfair prejudice pursuant to the fourth prong of *Golochowicz.* See *People v Miller,* 165 Mich App 32, 42; 418 NW2d 668 (1987). In sum, the evidence of the subsequent fires, whether or not resulting in an insurance claim by defendant Paige, should not have been admitted because the fact that the fires occurred and insurance claims may have been made does not translate into a scheme to defraud the insurer.

The trial court's error in admitting this evidence requires reversal since the error was not harmless beyond a reasonable doubt. *People v Swan,* 56 Mich App 22, 31-33; 223 NW2d 346 (1974), lv den 395 Mich 810 (1975). The evidence in this case was not overwhelming, depending largely on the credibility of two witnesses, Meredith and his former fiancee, Meta Carden Smith, who were not inherently credible. The question of defendant Paige's intent was a material issue. Absent evidence of the other insurance claims made by defendant Paige, it is reasonably possible that at least one juror would have found a reasonable doubt as to whether defendant Paige had an intent to defraud his insurer at the time of the July 28, 1983, fire. Accordingly, we reverse defendant Paige's two convictions.

In view of the nature of the conspiracy charge in

this case, requiring proof of a mutual agreement to do or accomplish an unlawful act, we also conclude that the error was not harmless as to defendant Bell. Absent untainted evidence that defendants Bell and Paige reached an agreement to burn the home for the purpose of defrauding Paige's insurer, it is reasonably possible that at least one juror would have voted to acquit defendant Bell of all charges. Bell and Paige were tried together. Although the evidence of other bad acts was admitted to show Paige's intent, there was no instruction that the jury could not use such evidence against Bell. We find it almost impossible to believe that a jury could fail to find Bell guilty once it determined Paige's wrongful intent based, in part, upon the inadmissible testimony. This is especially so given the fact that this is a conspiracy case. We find the probability very high that at least one juror would conclude that if Paige were not guilty, Bell should also be acquitted. Bell's defense is based upon the lack of credibility of the witnesses. The prosecution attempted to bolster their credibility by showing that the entire scheme was devised as part of Paige's overall plan to have his property burned to defraud his insurance company. Therefore, Paige's intent and Bell's acts are so intimately linked that they cannot be easily separated in the presence of the wrongfully admitted evidence.

III

Because we are remanding for a new trial, we do not address the sentencing issues raised by defendant Paige. We do, however, find merit in defendant Paige's argument that the evidence of the fire incident report for the November 18, 1984, fire was improperly admitted over his objection. The trial

court allowed the evidence pursuant to the public records exception to the hearsay rule contained in MRE 803(8)(B). This is a very narrow evidentiary rule, which expressly does not allow the admission of reports on criminal matters observed by law enforcement personnel. Further, MRE 803(8)(B) has been construed as not allowing the admission of investigative reports. Rather, the rule "reflects the narrow common-law rule which limits public reports of matters observed by agency officials to reports of objective data observed and reported by these officials." *Bradbury v Ford Motor Co,* 419 Mich 550, 554; 358 NW2d 550 (1984), and see *Hale v Cole,* 241 Mich 624; 217 NW 898 (1928), which held that a fire incident report was inadmissible as substantive evidence when made based on information not within the personal knowledge of the officer, i.e., was made based on a "partial personal investigation" and information provided by another. See *People v Shipp,* 175 Mich App 332; 437 NW2d 385 (1989).

The fire incident report at issue here was prepared by a fire fighter. However, one of its purposes was to provide information to a special arson unit consisting of police officers and fire fighters which investigated suspicious fires. The report contained investigative information, such as the suspected cause of the fire. Although the parties dispute whether the fire fighter who prepared the report can be considered a law enforcement official within the meaning of MRE 803(8)(B), we need not resolve this issue. Since the investigative information in the report was not admissible under MRE 803(8)(B) under any circumstance and we have held that the evidence of other subsequent fires was improperly admitted, there is no basis for admitting the fire incident report to establish any

fact of consequence to the charges against the defendants. Accordingly, on remand for a new trial, the fire incident report should be excluded.

Reversed and remanded for a new trial.