## PEOPLE v CONNER

Docket No. 113685. Submitted January 10, 1990, at Detroit. Decided March 19, 1990. Leave to appeal applied for.

James William Conner was charged with first-degree murder. He was bound over to stand trial on that charge following a preliminary examination. After the bindover, the prosecutor moved the court to hold a reluctant witness, Robert Johnson, in protective custody. Johnson was detained for a time and then let go. About six weeks before the trial the prosecutor tried to secure Johnson's presence at trial by trying his last known address and questioning his landlord, his neighbors and his relatives. Attempts were made to locate Johnson through the Secretary of State, the state police, the Employment Security Commission, the Department of Social Services, the county morgue, area hospitals, the county jail, the water department, the electric company, the phone company, the gas company, the post office, and his last known employer. All inquires were fruitless. The prosecutor moved for a ruling that Johnson was unavailable for trial so that his preliminary examination testimony might be admitted. The Recorder's Court of Detroit, George W. Crockett, III, J., denied the motion because the prosecutor failed to incarcerate Johnson between the preliminary hearing and the trial, the prosecution was tardy in its efforts to serve Johnson for trial, and the efforts to locate and serve Johnson were deficient. The people appealed by leave granted.

The Court of Appeals *held:*

Prior testimony may be introduced against a criminal defendant consistent with constitutional guarantees where the witness is unavailable for trial and the former testimony bears satisfactory indicia of reliability. To establish the unavailability of a witness so that prior testimony may be admitted at trial,

REFERENCES

Am Jur 2d, Criminal Law § 965.

Admissibility or use in criminal trial of testimony given at preliminary proceeding by witness not available at trial. 38 ALR4th 378.

Sufficiency of efforts to procure missing witness' attendance to justify admission of his former testimony—state cases. 3 ALR4th 87.

the prosecution must prove that it exercised diligent good-faith efforts to obtain the witness' presence at trial. The test is one of reasonableness. The record shows a sufficient good-faith effort to secure Johnson's appearance at trial. Johnson's prior testimony bears satisfactory indicia of reliability as he was thoroughly cross-examined by defense counsel at the preliminary examination.

Reversed and remanded.

1. CRIMINAL LAW — EVIDENCE — PRIOR TESTIMONY — RULES OF EVIDENCE.

Prior testimony may be introduced against a criminal defendant consistent with constitutional guarantees where the witness is unavailable for trial and the former testimony bears satisfactory indicia of reliability (MRE 804[b][1]).

2. CRIMINAL LAW — WITNESSES — UNAVAILABLE WITNESSES.

To establish the unavailability of a witness so that prior testimony may be admitted at trial, the prosecution must prove that it exercised diligent good-faith efforts to obtain the witness' presence at trial; the test is one of reasonableness.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief of the Criminal Division, and *Jeffrey Caminsky,* Assistant Prosecuting Attorney, for the people.

*Elizabeth L. Jacobs,* for defendant.

Before: GRIFFIN, P.J., and REILLY and R. B. BURNS,* JJ.

GRIFFIN, P.J. The people appeal by leave granted from a lower court order which denied their motion to use at trial a preliminary examination transcript of the testimony of a material witness whom the prosecution claimed was unavailable. The Recorder's Court felt compelled to bar the use of the former testimony based upon the authority of *People v Dye,* 431 Mich 58; 427 NW2d 501

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

(1988), cert den 488 US —; 109 S Ct 541; 102 L Ed 2d 571 (1988). We disagree and reverse.

I

Defendant James William Conner was charged with first-degree murder for the May 18, 1988, brutal beating death of Kevin Stanton.

On June 3, 1988, a preliminary examination was held. The first evidence received was an autopsy report on the victim admitted pursuant to stipulation. The report concluded that Stanton died of multiple blunt force injuries to his head, neck, and chest inflicted by a cylindrical object.

Next, Richard Perry testified that on May 18, 1988, he observed and spoke to the defendant at the Adams Apartment Building in the City of Detroit. At that time, the defendant was holding a baseball bat and appeared to be upset. When Perry asked the defendant what was wrong, the defendant responded that "a guy hit him in the face" and that he and his brother "had a little trouble." As the defendant paced back and forth in the hallway, he further told Perry that he was waiting for the man to come down from the upstairs because "he was going to get him." Perry did not witness the subsequent assault but a short time later observed the victim lying in a chair with a bloody towel covering his head.

The last witness called at the preliminary examination was Robert Johnson. Mr. Johnson testified that he was also present in the apartment house on May 18, 1988, at approximately 8:40 P.M., when he heard a noise "like, you know, someone got hit." After hearing the sound, Johnson looked around and saw the defendant with a baseball bat in his hand standing over Stanton's body. According to Johnson, the victim had a fresh injury to

his head. Following his direct testimony, Johnson was extensively cross-examined by defense counsel. The cross-examination included detailed questions as to Johnson's powers of observation, abilities of recall, and his previous conviction record. At the conclusion of the preliminary examination, the defendant was bound over to the Recorder's Court for trial on the charge of first-degree murder.

After the bindover, the prosecutor made an oral motion to hold Johnson "in protective custody" for the reason that Johnson had been a reluctant witness whose presence at the preliminary examination was secured only after the issuance of a bench warrant. The prosecutor noted that Johnson had failed to appear at the originally scheduled preliminary examination, although he had been served with a subpoena. In making the motion to incarcerate Johnson, the prosecution conceded ignorance as to the procedure to hold a witness in "protective custody." The district court expressed similar ignorance but nevertheless ordered Johnson detained:

> *The Court:* I don't know it [the procedure] either. I will order him held over. I guess I can.

The parties agree that Johnson was thereafter taken to the overcrowded Wayne County Jail where he was refused admission. Subsequently, the chief judge of the district court vacated the "material witness detainer" on the grounds that the district court had lost jurisdiction of the case following the bindover.

On July 29, 1988, a pretrial conference was held in Recorder's Court. A memorandum prepared in connection with the conference indicated that a three-day jury trial would be scheduled to commence on November 17, 1988. On August 29, 1988,

the parties were mailed a trial notice which confirmed the November 17, 1988, trial date.

II

On October 4, 1988, approximately six weeks before trial, the prosecutor resumed his efforts to secure the presence at trial of witness Robert Johnson. On that date, assistant prosecuting attorney Robert Donaldson requested that the officer in charge, Detroit Police Sergeant Kevin Kemp, serve Johnson with a subpoena for trial. Sergeant Kemp promptly proceeded to the Adams Apartment Building, No. 314, 438 Henry Street, Detroit, Michigan, where Johnson had previously been served with the subpoena for his appearance at the preliminary examination and with the bench warrant for his presence at the rescheduled preliminary examination. When Johnson was not found at the apartment, Kemp inquired as to Johnson's whereabouts from the people with whom Johnson had been living, the neighbors, and the management of the building. No one had any information as to Johnson's whereabouts.

Sergeant Kemp then made inquiries with Johnson's known relatives. Contact efforts with Lloyd Johnson proved unsuccessful. Sergeant Kemp, however, was able to speak with Edmund Johnson, brother of the witness, who indicated that he had not seen Robert in months and had no idea where he could be located.

Kemp then attempted to locate Robert Johnson by searching the records of the Secretary of State, the state police, the Michigan Employment Security Commission, and the Department of Social Services. The Secretary of State and Department of Social Services provided Kemp with addresses, but Johnson was not found at either location. The

Wayne County morgue, area hospitals, the Wayne County jail, the water department, Detroit Edison, Michigan Bell, Michigan Consolidated Gas Company, and the post office were also contacted to no avail. Johnson's last known place of employment was visited but no one had any information as to Johnson's current whereabouts. Sergeant Kemp testified that there were no leads or information he did not pursue.

Following Kemp's testimony, the prosecution moved for a ruling that Johnson was "unavailable" for the purpose of allowing the use at trial of Johnson's former testimony taken at the preliminary examination. Defendant opposed the motion, arguing that the prosecution failed to exercise due diligence in attempting to produce Johnson for trial.

The Recorder's Court judge denied the motion on the grounds that the prosecution failed to sustain its burden of proving that Robert Johnson was unavailable for trial. The lower court's written order states that the denial was based upon the rationale of *People v Dye, supra,* and for the reasons stated on the record. The additional reasons stated on the record were: (1) the failure of the prosecution to incarcerate Johnson for the five-month period between the preliminary examination and the scheduled trial; and (2) the tardiness of the people's efforts to serve Johnson for trial. The Recorder's Court judge recognized that "substantial efforts" were made to serve Johnson but felt compelled under *Dye* to rule that the prosecution's efforts were legally deficient:

> [W]hile the prosecution did demonstrate a number of substantial efforts to locate and obtain this witness, the Court is satisfied that it is barred from finding due diligence under *Dye,* where prose-

cution's failure to take adequate measures to ensure that a vital witness against a defendant would appear at trial.

### III

On appeal, the people argue that the trial court abused its discretion by excluding Johnson's preliminary examination testimony from use at trial. We agree.

### A

The Sixth Amendment of the United States Constitution, applicable to the states through the Fourteenth Amendment, and Const 1963, art 1, § 20, guarantee an accused the right to "be confronted with the witnesses against him . . . ." *People v Dye, supra.* Prior testimony may nonetheless be used by the prosecution consistent with such constitutional guarantees if the witness is "unavailable"[1] for trial, MRE 804(b)(1), and if the

---

[1] We construe the Michigan Rules of Evidence to be coextensive with constitutional guarantees. MRE 804(a)(5) specifically requires a showing of "due diligence" in criminal cases before former testimony may be used:

(a) "Unavailability as a witness" includes situations in which the declarant—

* * *

(5) is absent from the hearing and the proponent of his statement has been unable to procure his attendance (or in the case of a hearsay exception under subdivision (b)(2), (3), or (4), his attendance or testimony) by process or other reasonable means, and in a criminal case, due diligence is shown.

A declarant is not unavailable as a witness if his exemption, refusal, claim of lack of memory, inability, or absence is due to the procurement or wrongdoing of the proponent of his statement for the purpose of preventing the witness from attending or testifying.

We chose not to address the less restrictive evidentiary statute MCL 768.26; MSA 28.1049 as we deem the statute to be superseded by the Michigan Rules of Evidence. See MRE 101 and *People v Shipp,* 175 Mich App 332, 336-337; 437 NW2d 385 (1989).

former testimony bears satisfactory indicia of reliability. *Ohio v Roberts,* 448 US 56, 66; 100 S Ct 2531; 65 L Ed 2d 597 (1980).

In order to establish "unavailability," the prosecution must prove that it exercised diligent good-faith efforts to obtain the witness' presence at trial. *Barber v Page,* 390 US 719, 724-725; 88 S Ct 1318; 20 L Ed 2d 255 (1968); *People v McIntosh,* 389 Mich 82, 86; 204 NW2d 135 (1973). The lengths to which the prosecution must go to produce a witness is a question of reasonableness. The test is whether the proponent of the evidence made good-faith efforts to procure the testimony, not whether more stringent efforts would have produced it. *Barber v Page, supra.* The Michigan Supreme Court has indicated that, where there are no leads as to the witness' whereabouts, the prosecutor should inquire of known persons who might reasonably be expected to have information that would help locate the witness. Where there are specific leads as to the witness' location, the prosecutor must pursue them. *People v McIntosh, supra* at 87.

Whether the prosecution has made a diligent, good-faith effort to produce a missing witness is an evaluation that depends on the particular facts of each case. *People v Dye, supra* at 67. Further, the determination of due diligence by the trial court will not be overturned on appeal absent an abuse of discretion. *People v Starr,* 89 Mich App 342, 345; 280 NW2d 519 (1979).

B

There are several salient facts which distinguish the present case from the factual scenario addressed in *Dye.* First, the prosecution in *Dye* knew that the witnesses were likely to flee because of

fear of retaliation and possible prosecution. In the instant case there was no indication that Johnson would be difficult to find, only that he might be reluctant to testify. Johnson in fact had been readily located and served on two prior occasions with a subpoena for the preliminary examination and with a bench warrant. Even if drug dealers and transients regularly congregate at the Adams Apartment Building as claimed by the defendant, there was no evidence that Johnson was either.

In this case, although Johnson was known to be a reluctant witness, there was no reason to believe that he would flee or be difficult to serve. Under such circumstances, we hold that the prosecution's efforts to serve Johnson commencing six weeks in advance of the trial were timely.

Second, in *Dye* the Supreme Court found that a number of leads or avenues for finding the witnesses were either not pursued or improperly delegated. Here, however, the testimony of Sergeant Kemp established that nearly every avenue was pursued and virtually every lead followed. Although defendant claims that the prosecution should have attempted to determine whether Johnson's mother was alive and (if alive) whether she knew of her son's whereabouts, it is pure speculation that such an inquiry would have been fruitful. As stated by the United States Supreme Court in *Ohio v Roberts, supra* at 75-76:

> One, in hindsight, may always think of other things [which could have been done]. Nevertheless, the great improbability that such efforts would have resulted in locating the witness, and would have led to her production at trial, neutralizes any intimation that a concept of reasonableness required their execution.

Finally, we reject the argument that lack of due diligence is evidenced by the prosecution's failure to incarcerate Johnson for the five-month period between the preliminary examination and the scheduled trial. We note that, even if such an action were arguably authorized by statute,[2] constitutional protections would likely operate to bar such a prolonged detention. Const 1963, art 1, § 16[3] and US Const, Am XIV. Furthermore, the incarceration of material witnesses has become less feasible in the past several years due to our overcrowded penal system.

C

The remaining issue is whether Johnson's preliminary examination testimony bears the satisfactory indicia of reliability necessary for it to be read to the jury. We hold that it does.

MRE 804(b)(1)[4] provided at the time:

---

[2] MCL 767.35; MSA 28.975:

When it appears to a court of record that a person is a material witness in a criminal case pending in a court in the county and that there is a danger of the loss of testimony of the witness unless the witness furnishes bail or is committed if he or she fails to furnish bail, the court shall require the witness to be brought before the court. After giving the witness an opportunity to be heard, if it appears that the witness is a material witness and that there is a danger of the loss of his or her testimony unless the witness furnishes bail or is committed, the court may require the witness to enter into a recognizance with a surety in an amount determined by the court for the appearance of the witness at an examination or trial. If the witness fails to recognize, he or she shall be committed to jail by the court, until he or she does recognize or is discharged by order of the court.

[3] Const 1963, art 1, § 16:

Excessive bail shall not be required; excessive fines shall not be imposed; cruel or unusual punishment shall not be inflicted; *nor shall witnesses be unreasonably detained.*

[4] MRE 804(b)(1) is identical to FRE 804(b)(1).

The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

(1) Former testimony. Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

As previously noted, the record reveals that Johnson was thoroughly cross-examined by defense counsel at the preliminary examination. The cross-examination included detailed questioning as to Johnson's powers of observation, recall, interest, bias and credibility. Based upon this record, we conclude that Johnson's former testimony bears the satisfactory indicia of reliability necessary for it to be presented to the trier of fact. *Ohio v Roberts, supra.*

IV

In conclusion, we hold that the record in the instant case clearly establishes that witness Robert Johnson was "unavailable" for the scheduled trial and that the prosecution exercised reasonable efforts constituting due diligence in attempting to secure Johnson's presence for trial. Furthermore, Johnson's former testimony bears the satisfactory indicia of reliability necessary for it to be read to the jury. For these reasons, we conclude that the lower court abused *its* discretion in denying the

prosecutor's motion for use of Johnson's preliminary examination testimony.

Reversed and remanded. We do not retain jurisdiction.