MCDOUGALL v ELIUK

Docket No. 178042. Submitted April 16, 1996, at Detroit. Decided August 27, 1996, at 9:10 A.M. Leave to appeal sought.

Edward McDougall, as personal representative of the estate of Sandra M. McDougall, brought an action in the Wayne Circuit Court against Reuben D. Eliuk, D.O., and others, alleging medical malpractice by Dr. Eliuk, a specialist, in treating the decedent. The court, Paul S. Teranes, J., granted summary disposition for Dr. Eliuk on the basis that the plaintiff failed to offer a qualified expert witness in proposing Dr. Mark Robia as his expert witness. The court ruled that, although Dr. Robia was qualified under MRE 702 to testify as an expert witness, Dr. Robia was not qualified to testify as an expert witness under MCL 600.2169(1); MSA 27A.2169(1). The plaintiff appealed, and Dr. Eliuk cross appealed.

The Court of Appeals *held*:

1. MCL 600.2169(1); MSA 27A.2169(1), in providing that an expert witness in a medical malpractice action against a specialist must be licensed or was licensed to practice medicine, must specialize or did specialize at the time of the alleged malpractice in the same or a related, relevant area of medicine as the defendant, and must devote or did devote at the time of the alleged malpractice a substantial portion of time to the active practice or teaching of the specialty, conflicts with MRE 702, which provides that a witness may be qualified as an expert by knowledge, skill, experience, training, or education. The conflict must be resolved in favor of the rule of evidence. The Supreme Court's rule-making power in matters of practice and procedure, including rules of evidence, is superior to that of the Legislature. The statute violates the Separation of Powers Clause, Const 1963, art 6, § 5, to the extent that the statute conflicts with the rule of evidence.

2. The trial court did not abuse its discretion in qualifying Dr. Robia as an expert witness under MRE 702 on the basis of Dr. Robia's knowledge, experience, education, and training.

Affirmed in part and reversed in part.

TAYLOR, P.J., dissenting, stated that when the Legislature enacts a statute implicating a matter of public policy through a rule of evidence, as the Legislature did with respect to MCL 600.2169(1); MSA

27A.2169(1), the statute must be found constitutional because, in matters of public policy, the Legislature, not the courts, is in control. The additional requirements imposed by the statute at issue constituted a change in a statutory cause of action that originated from the common law. Const 1963, art 3, § 7 empowers the Legislature to abolish or modify a common-law cause of action. Implicit in that power is the ability to change anything within the cause of action, including circumscribing those qualified to give the requisite proofs to establish the elements of the cause of action.

1. WITNESSES — EXPERT WITNESSES — MEDICAL MALPRACTICE ACTIONS.

The statute that imposes requirements regarding the qualification of an expert witness in a medical malpractice action against a specialist beyond those required by the rule of evidence governing expert witnesses conflicts with the rule of evidence and violates the Separation of Powers Clause of the Michigan Constitution; the rulemaking power of the Supreme Court in matters of practice and procedure, including rules of evidence, is superior to that of the Legislature (MCL 600.2169[1]; MSA 27A.2169[1]; MRE 702; Const 1963, art 6, § 5).

2. WITNESSES — EXPERT WITNESSES — QUALIFICATION — APPEAL.

A trial court's decision to qualify a witness as an expert witness on the basis of the witness' knowledge, skill, experience, training, or education is reviewed on appeal for abuse of discretion (MRE 702).

*Lakin, Worsham & Victor, P.C.* (by *Sanford N. Lakin, Larry A. Smith* and *Ron S. Kirsch*), for Edward McDougall.

*O'Leary, O'Leary, Jacobs, Mattson, Perry & Mason, P.C.* (by *John P. Jacobs*), for Reuben D. Eliuk.

Amici Curiae:

*Mark Granzotto,* for Michigan Trial Lawyers Association.

*Gross, Nemeth & Silverman, P.L.C.* (by *James G. Gross*), for Michigan Defense Trial Counsel.

*Kerr, Russell and Weber* (by *Richard D. Weber* and *Joanne G. Swanson*), for Michigan State Medical Society.

Before: TAYLOR, P.J., and FITZGERALD and P. D. HOUK,[*] JJ.

FITZGERALD, J. In this medical malpractice action arising out of the death of plaintiff's thirty-year-old wife from complications arising from undiagnosed diabetes, plaintiff appeals as of right the trial court's finding that MCL 600.2169(1); MSA 27A.2169(1) is constitutional and that plaintiff's only expert, Dr. Mark Robia, did not meet the qualifications set forth in the statute to testify against defendant Reuben D. Eliuk, D.O.[1] The trial court also held that, if the issue of competency was resolved solely under MRE 702, plaintiff's expert would be qualified to testify. In this case of first impression, plaintiff appeals the trial court's dismissal of the claim against Dr. Eliuk.

The parties agree that the Supreme Court's rule-making power in matters of practice and procedure is superior to that of the Legislature. Const 1963, art 6, § 5. The rules of practice and procedure include the rules of evidence. *Perin v Peuler (On Rehearing)*, 373 Mich 531, 541; 130 NW2d 4 (1964); *Mumaw v Mumaw*, 124 Mich App 114, 120; 333 NW2d 599 (1983). The parties also agree that a statutory rule of evidence not in conflict with the Michigan Rules of Evidence remains effective until superseded by rule

---

[*] Circuit judge, sitting on the Court of Appeals by assignment.

[1] Plaintiff stipulated that Dr. Robia did not meet the qualifications set forth in the statute because he did not specialize in the field of internal medicine at the time of the proceedings below or at the time of the alleged malpractice.

or decision of the Supreme Court. MRE 101. Despite their rhetoric, the parties also agree that MCL 600.2169(1); MSA 27A.2169(1) prevents, and was intended to prevent, some experts from testifying in malpractice cases who would have been able to testify if their qualifications had been tested solely under MRE 702. The narrow issue presented, therefore, is whether the Supreme Court's adoption of MRE 702 precludes the Legislature from enacting a statute that imposes additional competency requirements beyond those listed in the court rule for qualification of an expert.

The general rule in Michigan regarding qualification of expert witnesses is MRE 702:

> If the court determines that recognized scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

In 1986, the Michigan Legislature passed a series of bills commonly referred to as the tort reform acts of 1986. One of the acts[2] established new and more stringent standards for the qualification of expert witnesses in medical malpractice actions:

> (1) In an action alleging medical malpractice, if the defendant is a specialist, a person shall not give expert testimony on the appropriate standard of care unless the person is or was a physician licensed to practice medicine or osteopathic medicine and surgery or a dentist licensed to practice dentistry in this or another state and meets both of the following criteria:

---

[2] 1986 PA 178, effective October 1, 1986.

(a) Specializes, or specialized at the time of the occurrence which is the basis for the action, in the same specialty or a related, relevant area of medicine or osteopathic medicine and surgery or dentistry as the specialist who is the defendant in the medical malpractice action.

(b) Devotes, or devoted at the time of the occurrence which is the basis for the action, a substantial portion of his or her professional time to the active clinical practice of medicine or osteopathic medicine and surgery or the active clinical practice of dentistry, or to the instruction of students in an accredited medical school, osteopathic medical school, or dental school in the same specialty or a related, relevant area of health care as the specialist who is the defendant in the medical malpractice action. [MCL 600.2169; MSA 27A.2169.[3]]

In determining whether there is a real conflict between a statute and a court rule, both should be read according to their plain meaning, *Buscaino v Rhodes*, 385 Mich 474, 481; 189 NW2d 202 (1971), and the common-sense meaning of the words should be given the effect most likely understood by those who adopted them. *Id.*

First, the conflict between § 2169 and MRE 702 is readily apparent. The plain language of MRE 702 grants the trial court discretion to qualify a witness as an expert if the expert possesses the requisite "knowledge, skill, experience, training or education." By contrast, the trial court may not exercise discre-

---

[3] The statute was subsequently further amended to require that an expert who testifies against a specialist must specialize in the same field, not merely in a related relevant area. Also under the amendment an expert may not testify in a medical malpractice action against a board-certified specialist unless the witness is also board-certified in the same specialty and during the year preceding the occurrence a majority of the witness' time was devoted to either the clinical practice or the teaching of that particular specialty. MCL 600.2169(1)(b)(i) and (ii); MSA 27A.2169(1)(b)(i) and (ii).

tion under § 2169(2)[4] unless the competency requirements of § 2169(1) are met.

Second, in giving effect to the common-sense meaning of each provision, the evidentiary rule clearly embodies the same determination made by the Michigan Legislature that expert testimony is required to establish the standard of care in a medical malpractice case. However, the evidentiary rule does not exclude experts who are qualified by their knowledge, skill, experience, training, or education, from testifying against a specialist solely because the expert does not specialize in the same or a related area of medicine as the defendant and does not devote a substantial portion of professional time to the practice or instruction of the same or a related area of medicine as the defendant. While the statute barred the qualification of Dr. Robia as an expert in the present case, the trial court determined that Dr. Robia would have been qualified as an expert under the evidentiary rule.

Thus, it is evident that the two provisions are not redundant, but rather reflect two different approaches in determining the qualification of an expert as a witness. Inasmuch as the two provisions stand at odds, the evidentiary rule must be found to supersede § 2169(1). See, e.g., *Mumaw, supra* (this Court found a direct conflict between a statute that declared that a spouse was incompetent to testify on the issue of adultery in a divorce action and a court rule declaring that all persons are competent to testify), and *Dahn v Sheets*, 104 Mich App 584; 305 NW2d 547 (1981) (this Court found a conflict between the dead man's stat-

---

[4] MCL 600.2169(2); MSA 27A.2169(2).

ute and the court rule regarding competence to testify). Thus, to the extent that § 2169(1) conflicts with the procedural mandates of MRE 702, it is unconstitutional.

We disagree with the dissent's conclusion that cases such as *People v Adair*, 452 Mich 473; 550 NW2d 505 (1996), have narrowed *Perin*'s holding that the Supreme Court's rule-making power in matters of practice and procedure is superior to that of the Legislature. In *Adair*, the Court was not confronted with a conflict between the rape-shield statute (which calls for exclusion of evidence of past sexual conduct not incident to the alleged sexual assault when the probative value is merely outweighed by prejudicial consideration) and MRE 403 (which calls for the exclusion of probative evidence when "substantially" outweighed by prejudicial considerations). Rather, in analyzing the statute as a backdrop to a determination of the meaning of the word "past" in the rape-shield statute, the Court noted that the Legislature determined that past sexual conduct is legally irrelevant and inadmissible as a matter of law. *Id.* at 482. The Court was not confronted with the issue that is presented in the instant case. Further, MRE 101 merely echoes Const 1963, art 6, § 5, which gives the Supreme Court rule-making power in matters of practice and procedure.

The dissent suggests that it is "antimajoritarian" in a republican form of government for the judiciary to declare unconstitutional an act of the Legislature. We vehemently disagree. Const 1963, art 3, § 2 provides: "The powers of government are divided into three branches: legislative, executive, and judicial. No person exercising powers of one branch shall exercise

powers properly belonging to another branch except as expressly provided in this constitution." The three branches of government are equal and independent. The constitution has given the Supreme Court rule-making power in matters of practice and procedure. Const 1963, art 6, § 5. Where the Legislature exercises powers belonging to the Supreme Court by enacting a statutory rule of evidence in conflict with an existing rule of evidence, it acts unconstitutionally. There is nothing antimajoritarian about the judiciary so declaring.

On cross appeal, defendant argues that the trial court abused its discretion in finding that Dr. Robia was qualified to testify as an expert under MRE 702. We disagree.

A party offering the testimony of an expert must demonstrate the witness' knowledge of the applicable standard of care. *Bahr v Harper-Grace Hosps*, 448 Mich 135, 141; 528 NW2d 170 (1995). The plaintiff bears the burden of showing that his expert possesses the necessary learning, knowledge, skill, and experience to testify. *Siirila v Barrios*, 398 Mich 576, 591; 248 NW2d 171 (1976). A trial court's decision to qualify a witness as an expert is reviewed for an abuse of discretion. *Bahr, supra* at 141.

Dr. Robia testified to the trial court's satisfaction regarding his qualifications and familiarity, based on education and training, with the standard of care applicable to an internist. The trial court noted that Dr. Robia is board-certified in internal medicine. Dr. Robia actively practiced as an internist until 1982 and currently spends a small percentage of his professional time in consultation. Dr. Robia regularly keeps abreast of the medical literature and testified that he

is aware of the applicable standard of care for an internist. Given Dr. Robia's knowledge, experience, education, and training, we cannot conclude that the trial court abused its discretion in finding Dr. Robia qualified to testify as an expert under MRE 702.

Affirmed in part and reversed in part.

P. D. Houk, J., concurred.

TAYLOR, P.J. (*dissenting*). I respectfully dissent. I would affirm the trial court's dismissal of plaintiff's complaint because I agree with the trial court's conclusion that former MCL 600.2169(1); MSA 27A.2169(1) is constitutional.

This case presents the question whether the people of this state, speaking through their legislators and faced with what they perceive to be a crisis threatening the delivery of health care due to runaway medical malpractice litigation and insurance costs, can fashion a remedy as part of the 1986 tort reforms that limits those who can qualify as expert witnesses in cases against medical specialists.[1] We are told by the

---

[1] The problem, as set forth in the Report of the Senate Select Committee on Civil Justice Reform, issued September 26, 1995, was as follows:

As a practical matter, in many courts merely a license to practice medicine is needed to become a medical expert on an issue.

This has given rise to a group of national professional witnesses who travel the country routinely testifying for plaintiffs in malpractice actions. These "hired guns" advertise extensively in professional journals and compete fiercely with each other for the expert witness business. For many, testifying is a full-time occupation and they rarely actually engage in the practice of medicine. There is a perception that these so-called expert witnesses will testify to whatever someone pays them to testify about.

This proposal is designed to make sure that expert witnesses actually practice or teach medicine. In other words, to make sure that experts will have firsthand practical expertise in the subject matter about which they are testifying. In particular, with the mal-

majority that the people cannot do this because the reform the Legislature has chosen is in the nature of a rule of evidence that is not a mirror image of the Supreme Court's Rule of Evidence 702 and, thus, unconstitutional. The majority concludes, implicitly, that any change in this area of the law must come from the nonpolitical branch of government: the judiciary. The crux of the majority's holding is that the crucial step for a litigant who wishes to thwart the will of the people is to first get the statute that the people have enacted declared to be subsumed within the Rules of Evidence. That being done, the second step is the easy one of finding that the statute is not redundant with a court-enacted rule of evidence. The Legislature's will is thus declared unconstitutional, and the judiciary, unanswerable to the people because judges cannot address political matters in their electoral campaigns,[2] is in absolute control. The reform, conveniently for those who never wanted the matter addressed anyway, is off the table and indeed in the constitutional deep freeze. This is, I believe, deeply flawed constitutional theory. It is starkly antimajoritarian and runs head-on into the organizing concept of our constitution: self-government.[3] See *The*

---

practice crisis facing high-risk specialists, such as neurosurgeons, orthopedic surgeons and ob/gyns, this reform is necessary to insure that in malpractice suits against specialists the expert witnesses actually practice in the same speciality. This will protect the integrity of our judicial system by requiring real experts instead of "hired guns."

[2] Michigan Code of Judicial Conduct, Canon 7. See also State Bar of Michigan Ethics Opinion JI-82, February 25, 1994.

[3] From the fact that I believe that the majority, *in the instant case*, is acting in a manner that I describe as "antimajoritarian," the majority concludes that I am suspect in my reverence for the institution of judicial review. This is an extraordinary leap of flawed reasoning. By the same

*Federalist Papers*, No. 51, p 160 and No. 78, p 227, Fairfield edition (Anchor Books, 1961). I believe that the majority's position misunderstands the authority the people allocated to the Legislature and the courts, and neither the language of the constitution nor case law in this state necessitates or justifies such a result.

Plaintiff filed a lawsuit alleging that defendant committed medical malpractice. In order to establish such a claim, a plaintiff must demonstrate the following four factors: (1) the applicable standard of care; (2) a breach of that standard of care by the defendant; (3) an injury; and (4) proximate causation between the alleged breach and the injury. *Locke v Pachtman*, 446 Mich 216, 222; 521 NW2d 786 (1994). With limited exceptions, not relevant here, expert testimony is required in medical malpractice cases to establish the applicable standard of care and to demonstrate that the defendant in some way breached that standard. *Id.* at 230; *Birmingham v Vance*, 204 Mich App 418, 421; 516 NW2d 95 (1994).

As part of the tort reform legislation of 1986, the Legislature enacted former MCL 600.2169(1); MSA 27A.2169(1), which stated that expert witnesses in medical malpractice cases against specialists may not give testimony regarding the appropriate standard of care unless the person: (1) was or is licensed to practice medicine; (2) specializes or specialized at the time of the occurrence in the same or a related, relevant area of medicine as the defendant; and (3)

---

logic, I could conclude that the majority is insufficiently reverential of the institutions of democracy because it would replace the judgment of the representative branches of government with that of judges. Just as I am confident that the majority believes in democratic institutions, I believe in judicial review, but believe that there are limitations to its exercise.

devotes or devoted at the time of the occurrence a substantial portion of time to the active practice of the specialty or to the teaching of the specialty.

Section 2169 applies to defendant, because he is a specialist. Further, plaintiff conceded that his sole expert witness does not meet the qualifications of § 2169. The trial court rejected plaintiff's claim that § 2169 was unconstitutional and, given plaintiff's lack of an expert witness, the court granted summary disposition of the complaint. Contrary to the decision of the majority, I believe that the decision of the trial court should be affirmed.

The general rules we are to consider in reviewing a claim that a statute is unconstitutional are well established. This Court must presume that the statute is constitutional and construe the statute as constitutional, unless its unconstitutionality is clearly apparent. *People v McDonald*, 201 Mich App 270, 273; 505 NW2d 903 (1993); *Johnson v Harnischfeger*, 414 Mich 102, 112; 323 NW2d 912 (1982). We must presume that the Legislature intended that the statute "not conflict with constitutional requirements." *People v Hackett*, 421 Mich 338, 347, n 1; 365 NW2d 120 (1984). More specifically, this Court must not lightly presume that the Legislature intended a conflict between a statute and a rule of evidence. *People v Dobben*, 440 Mich 679, 697, n 22; 488 NW2d 726 (1992). A court will refuse to sustain the validity of a statute only when its invalidity appears so clearly as to leave no room for reasonable doubt that it violates a provision of the constitution. *People v Piasecki*, 333 Mich 122, 143-144; 52 NW2d 626 (1952). In sum, we should make every effort, and engage in every presumption, to find that the Legislature acted in accordance with the constitu-

tion. I believe these admonitions are crucial and that the majority has failed to heed them.

Const 1963, art 6, § 5 provides that the "supreme court shall by general rules establish, modify, amend and simplify the practice and procedure in all courts of this state." Similarly, MCL 600.223; MSA 27A.223 states that the Supreme Court has authority to promulgate and amend general rules governing practice and procedure in all courts of record.[4] In 1964, the Supreme Court decided *Perin v Peuler (On Rehearing)*, 373 Mich 531, 541; 130 NW2d 4 (1964). *Perin* was decided long before the Supreme Court's 1978 codification of the Rules of Evidence, when the rules of evidence were seen, as they had always been historically, as being based on the case law and, thus, bound by the disciplines of the common law. The Supreme Court stated as follows in *Perin*:

> The function of enacting and amending judicial rules of practice and procedure has been committed exclusively to this Court (Const 1908, art 7, § 5; Const 1963, art 6, § 5); a function with which the legislature may not meddle or interfere save as the Court may acquiesce and adopt for retention at judicial will. . . .[W]e advert to what was said above—that the rules of practice and procedure include the rules of evidence. [Id. at 541.]

---

[4] Compare 28 USC 2072, which provides that the United States Supreme Court shall have the power to prescribe rules of practice and procedure and rules of evidence and that such rules shall not abridge, enlarge, or modify any substantive right. This federal statute also states that all laws in conflict with such rules shall be of no further force or effect after such rules have taken effect. Notwithstanding this statute, it was Congress, and not the United States Supreme Court, that adopted the Federal Rules of Evidence in 1975 (PL 93-595). It also is of interest that Congress revised FRE 412 and enacted new Federal Rules of Evidence 413, 414, and 415 in 1994 as part of the Violent Crime Control and Law Enforcement Act of 1994. 1 Hackett's Evidence: Michigan & Federal (2d ed), § 2.10, n 3.

This holding in *Perin* seems quite broad and, in fact, the majority has so construed it. Yet, I believe the Supreme Court itself subsequently narrowed and softened it.

In *People v Daniels*, 394 Mich 524; 232 NW2d 171 (1975), the Supreme Court held that a statute requiring a cash or surety bond for a defendant charged with a crime committed while released on a personal recognizance bond took precedence over a court rule requiring release on personal recognizance of a defendant incarcerated more than six months to answer for a felony charge. Three years later the Supreme Court enacted the Michigan Rules of Evidence and included the following provision in MRE 101: "A statutory rule of evidence not in conflict with these rules or other rules adopted by the Supreme Court is effective until superseded by rule or decision of the Supreme Court." Most recently in *People v Adair*, 452 Mich 473, 481; 550 NW2d 505 (1996), the Supreme Court, while clearly finding that the rape-shield statute, MCL 750.520j; MSA 28.788(10), and MRE 403 allowed for the exclusion of evidence on different standards,[5] decided the case as if the rape-shield statute were controlling. These cases and MRE 101 show that the broad reading of *Perin*, i.e., the statute must be identical to the rule of evidence or there is an unconstitutional conflict, is not sustainable and that a more sophisticated, nuanced analysis is required than *Perin* would initially suggest.

---

[5] The *Adair* Court stated: "MRE 403 calls for the exclusion of probative evidence when 'substantially' outweighed by prejudicial considerations. *In contrast,* the rape-shield statute calls for exclusion when the probative value is merely outweighed by prejudicial considerations." *Adair, supra* at 481 (emphasis added).

Certainly, it is not appropriate to say that the test is a simple mirror-image test as the majority does. Neither is it proper to say *Perin* has no viability. Rather, I believe the rule to be discerned is that, when the Legislature acts to make a rule of evidence or court rule more specific on the basis of public policy concerns, it will be upheld on judicial review, especially when such a statute addresses more than a purely evidentiary matter.[6] Stated somewhat differently, when the Legislature enacts a statute implicating a matter of public policy concern, carried out through evidentiary means, the statute must be found constitutional.[7] This test helps explain not only the interaction between *Perin, Daniels, Adair,* and MRE 101 but also the other cases that have found purely evidentiary statutory enactments to be superseded by Supreme Court promulgated rules of evidence.[8]

---

[6] Accord *Kirby v Larson,* 400 Mich 585, 598; 256 NW2d 400 (1977) (statute superseded by rule of evidence *because no clear legislative policy reflecting considerations other than judicial dispatch of litigation could be identified*).

[7] With reference to the bond statute upheld in *Daniels,* the Legislature's policy concern was the need to provide additional assurances that those charged with crimes while on personal recognizance bond would appear for further proceedings, including trial. The rape-shield statute considered in *Adair* represented a response to the Legislature's concern that victims of sexual assault were frightened of testifying because of unlimited cross-examination rights, thus frustrating society's vital interest in prosecuting sexual crimes. See *People v Arenda,* 416 Mich 1, 9; 330 NW2d 814 (1982).

[8] See *Mumaw v Mumaw,* 124 Mich App 114, 120; 333 NW2d 599 (1983) (statute declaring a spouse was incompetent to testify superseded by subsequently adopted MRE 601, which does not recognize such an exception); *Dahn v Sheets,* 104 Mich App 584; 305 NW2d 547 (1981) (dead man's statute superseded by MRE 601); *People v Shipp,* 175 Mich App 332, 336-338; 437 NW2d 385 (1989) (the business record statute superseded by MRE 803[6]); and *People v Conner,* 182 Mich App 674, 680, n 1; 452 NW2d 877 (1990) (MRE 804[a][5] found to supersede less restrictive former testimony statute). I do not discern the same kind of broad public policy motivation behind these trumped statutes. Rather, they are in nature more purely evidentiary. If I did discern a broad public policy component, I

Further, this public-policy-sensitive test is in accord with our constitutional heritage because it is reflective of the bedrock constitutional value that, in matters of public policy, the Legislature, not the courts, is in control. *Piasecki, supra* at 145. Given the great latitude accorded to the Legislature by the Supreme Court when the Legislature dispositively addresses public policy matters in statutes that alter the Court's general rules, we should afford § 2169 the same latitude here. Because the statute here at issue was clearly directed at a public policy concern, as discussed above, we should find it to be constitutionally permissible.

This effort to respond to the majority having been completed, it must be pointed out that this case should not, in any event, turn on the presence, or lack thereof, of a conflict between § 2169 and MRE 702. Rather, it should be disposed of on the basis that the Legislature, in enacting a measure that was more akin to a substantive law than a procedural rule, was doing that which it has express constitutional authority to do: amend or repeal the common law. Const 1963, art 3, § 7; *Myers v Genesee Co Auditor,* 375 Mich 1; 133 NW2d 190 (1965). Thus, MRE 702 must yield to § 2169.

The Legislature's primacy in matters of substantive law was demonstrated in *Smith v Smith,* 433 Mich 606, 619-620; 447 NW2d 715 (1989). In *Smith,* the Supreme Court found that a then-existing court rule allowing a trial court to order postmajority child support payments in exceptional circumstances was con-

---

would find that they were wrongly decided and not binding on us pursuant to Administrative Order No. 1996-4.

trary to legislation limiting support payments to the age of majority. The Court concluded that, because such legislation was substantive, it superseded a conflicting court rule. The Court obviously determined that the age at which an obligation to pay child support should end was a matter of public policy properly left to the Legislature. This was consistent with the idea that a rule is properly found to be substantive if it declares a general public policy. Comment, *Rules of Evidence: An Exercise of Constitutional Power by the Michigan Supreme Court*, 1980 Detroit C L R 1063, 1081.

The Legislature acted entirely within its constitutional power to amend or repeal the common law when it enacted § 2169. The Legislature may choose to change a common law cause of action, such as one for medical malpractice, or to abolish a cause of action altogether. *O'Brien v Hazelet & Erdal*, 410 Mich 1, 15; 299 NW2d 336 (1980) (the Legislature's constitutional power to change the common law authorizes it to extinguish common-law rights of action); *Fennell v John J Nesbitt, Inc*, 154 Mich App 644, 649; 398 NW2d 481 (1986) (the wide-reaching power of the Legislature permits it to entirely abrogate a common-law right). See also *Bean v McFarland*, 280 Mich 19; 273 NW 332 (1937) (constitutional retention of common law is expressly conditioned upon the right to abrogate the same or any part thereof).

Incontestably, the power of abolition must contain within it the lesser power to modify. Where the grant of a substantive right is inextricably intertwined with the limitations on the procedures that are employed in determining the right, a litigant such as plaintiff

"must take the bitter with the sweet." *Arnett v Kennedy*, 416 US 134, 153-154; 94 S Ct 1633; 40 L Ed 2d 15 (1974). Accordingly, where, as here, the Legislature is addressing a statutory cause of action that originated from the common law, it must have the ability to change anything within it, including circumscribing those qualified to give the requisite proofs to establish the elements of the cause of action. *Finkelstein v Dep't of Revenue*, 312 Mich 186; 20 NW2d 154 (1945). Thus, it is appropriate to see this situation as one in which the Legislature has opted to continue to recognize the tort of medical malpractice against specialists, but only on condition that proof of such malpractice emanate from sources of reliable character as defined by the Legislature. This statutory modification of our common-law jurisprudence reflects a careful legislative balancing of policy considerations about the importance of the medical profession to the people of Michigan, the economic viability of medical specialists, the social costs of "defensive medicine," the availability and affordability of medical care and health insurance,[9] the allocation of risks, the costs of malpractice insurance, and manifold other factors, including, no doubt, political factors—all matters well beyond the competence of the judiciary to reevaluate as justiciable issues. Clearly, it is for the Legislature,

---

[9] As this Court said in discussing a challenge to a different portion of these 1986 reforms:

The state unquestionably has a legitimate interest in securing adequate and affordable health care for its residents. And it is reasonable to assume that a lessening of exposure to malpractice claims would encourage health-care providers to remain in this state. [*Bissell v Kommareddi*, 202 Mich App 578, 581; 509 NW2d 542 (1993).]

and not the courts, to change substantive laws affecting public policy.

Accordingly, because § 2169 constitutes a substantive change in a statutory cause of action that originated from the common law, which the Legislature is authorized to effect, it takes precedence over MRE 702. *Smith, supra.*

In summary, we need not embark upon this alarmingly antimajoritarian path if we merely thoughtfully review how our Supreme Court has applied the *Perin* doctrine. This will lead us to conclude that *Perin* need not be read so as to do violence to our most basic constitutional understandings. Further, this matter should be resolved on the basis that this statute is properly seen as an exercise in furtherance of the Legislature's express constitutional authority to change or repeal the common law, such that it does not come within the reach of *Perin*.

For all these reasons, I would affirm the decision of the trial court and find the cross appeal moot.