KELLY, J.
odissenting). I disagree with the majority’s conclusion that the plaintiffs expert was not qualified to testify that the defendant doctor breached the stan *583 dard of care. The majority’s decision hinges on its assertion that the area of medical malpractice is uncontested and that it is internal medicine. This is incorrect.
Rather, the “uncontested” area of alleged medical malpractice is critical care. Plaintiff argued that critical care medicine was the relevant area of inquiry. Defendant never disputed it. And the trial court never made a determination on the issue.
In misconstruing the record, the majority has made an improper factual determination. Once it is exposed, it becomes obvious that the outcome of the majority’s decision is fatally flawed. The Court of Appeals decision should be affirmed and plaintiffs expert witness should be allowed to testify.
A PRINCIPLED APPROACH TO THE STATUTE
MCL 600.2169(1) sets forth the requirements for experts who testify regarding the appropriate standard of care in medical malpractice cases. If the defendant doctor is a specialist, an expert witness must practice in the same specialty as the defendant. If the defendant is board-certified, the expert must be board-certified in the same specialty.
However, it is the medical specialty in which the defendant was practicing when the malpractice allegedly occurred that is the touchstone of an expert’s qualification to testify regarding the “appropriate standard of care.” Logically, testimony regarding the appropriate standard must pertain to the defendant’s alleged breach of a specific standard of care. The statute comprehends that fact. MCL 600.2169(2)(d) requires that, when “determining the qualifications of an expert witness in an action alleging medical malpractice,” the court “shall.. . evaluate .. . [t]he relevancy of the expert witness’s testimony.”
*584 In this case, the defendant doctor was board-certified in internal medicine. Although it is undisputed that the relevant standard of care involved critical care, it is not clear whether defendant’s board certification in internal medicine was relevant to the malpractice claim. If it were, in order to testify under the requirements of MCL 600.2169, the standard-of-care witness would have to be a board-certified internist.
At the hearing on defendant’s motion to strike, the trial court addressed neither the area of the alleged malpractice nor the relevance of defendant’s board certification to that area. The court merely ascertained what paper credentials each doctor held and whether their board certifications matched. Left unresolved was whether the area of alleged malpractice must be identified before the application of MCL 600.2169.
At the hearing on the motion, defendants did not argue that internal medicine was being practiced when the alleged malpractice occurred. Having no interest in discussing the area of the alleged malpractice, defendants focused solely on whether the board certifications possessed by the experts must match. In contrast, plaintiff argued that the area of medicine being practiced was the specialty of critical care medicine. Accordingly, plaintiff argued that one must consider the qualifications of the expert with regard to critical care medicine, not internal medicine.
Hence, the majority correctly notes that the issue of relevancy was uncontested. Plaintiff asserted that critical care was the relevant medical area. Defendant did not dispute that claim. Only plaintiff alleged the appropriate area of medical malpractice. Defendant chose instead to argue that the board certification of defendant and plaintiffs expert must match. Thus, defen *585 dant failed to dispute plaintiffs contention that the area of critical care medicine was the proper focus.
Plaintiffs expert planned to testify as a critical care doctor commenting on the care and treatment provided by another critical care doctor. He was prepared to testify that the defendant doctor breached several standards of care in critical care medicine.
A conclusion that the nature of the underlying malpractice claim has no bearing on an expert witness’s qualification to testify would defy the statute and its purpose. An assumption that an expert witness must hold the same board certification as that held by the defendant, even when it bears no relevance to the malpractice alleged, would be fallacious.
THE STATUTE AND THE LEGISLATURE’S INTENT
The pertinent statutory language is located in MCL 600.2169, which provides in part:
(1) In an action alleging medical malpractice, a person shall not give expert testimony on the appropriate standard of practice or care unless the person is licensed as a health professional in this state or another state and meets the following criteria:
(a) If the party against whom or on whose behalf the testimony is offered is a specialist, specializes at the time of the occurrence that is the basis for the action in the same specialty as the party against whom or on whose behalf the testimony is offered. However, if the party against whom or on whose behalf the testimony is offered is a specialist who is board certified, the expert witness must be a specialist who is board certified in that specialty.
The Legislature’s true intent in writing it is revealed only when one reads § 2169 in its entirety.
In setting forth the requirements that an expert witness must meet before qualifying to testify regarding *586 the standard of care in a medical malpractice case, the statute begins: “[A] person shall not give expert testimony on the appropriate standard of practice or care unless . .. MCL 600.2169 (emphasis added). Since the expert must give testimony about the appropriate standard of care, it follows that the expert’s certification must be in the area of the alleged malpractice. Any other board certification would be irrelevant.
The second sentence of MCL 600.2169(l)(a) begins with the adverb “[hjowever,” indicating that the meaning of the language that follows “[hjowever” contrasts with that which precedes it. The word “however” is less likely to suggest an additional requirement, as the majority concludes, than to suggest a different requirement in an alternative set of circumstances.
Applied to this case, if the alleged malpractice were in internal medicine, the expert would have to be board-certified in that area because the defendant is board-certified in it. Alternatively, if the alleged malpractice involved a medical specialty in which defendant was not board-certified, the first sentence of the statute would control. If defendant specialized in that area, the expert witness would have to specialize in that area as well.
Furthermore, MCL 600.2169(l)(b)(i) requires that an expert have devoted, in the year preceding the date of the alleged injury, a majority of his or her professional time to: “The active clinical practice of the same health profession. . . and, if that party is a specialist, the active clinical practice of that specialty.” “Specialty” in this provision refers to a specific area of medical practice. This supports the conclusion that the necessary and relevant qualifications of an expert who will testify regarding the appropriate standard of care are determined by the area of the alleged malpractice.
Moreover, the statute continues:
*587 In determining the qualifications of an expert witness in an action alleging medical malpractice, the court shall, at a minimum, evaluate all of the following:
(a) The educational and professional training of the expert witness.
(b) The area of specialization of the expert witness.
(c) The length of time the expert witness has been engaged in the active clinical practice or instruction of the health profession or the specialty.
(d) The relevancy of the expert witness’s testimony. [MCL 600.2169(2).]
Subsections 1 and 2 do not stand alone. Subsection 1 sets forth a threshold requirement applicable only to standard-of-care witnesses. But all expert witnesses, including standard-of-care witnesses, are subject to subsection 2. There is no language indicating that subsection 1 must be met before subsection 2 is applied to a standard-of-care witness. The qualification of any expert must be evaluated under subsection 2. Its criteria ensure that the testimony of the expert provides assistance to the trier of fact.
The statute, read as a whole, bestows considerable discretion on the trial judge. Included is the authority to determine that the area in which the defendant is board-certified is relevant to the standard of care involved in the suit. MCL 600.2169(2). The first section of the statute is merely an additional requirement placed on standard-of-care witnesses.
Subsection 2 does not exclude standard-of-care witnesses from its purview. It reads: “In determining the qualifications of an expert witness in an action alleging medical malpractice . . ..” There is no language in this section to suggest that it is applicable to all but standard-of-care witnesses. Rather, the requirements apply to “an expert witness.”
*588 AVOIDING AN ABSURD RESULT
It is likely that cases will arise in which a doctor chooses to practice outside the doctor’s area of board certification. A construction of the statute that ignores the area of the alleged malpractice could lead to absurd results in these cases. For example, assume a doctor is board-certified as an obstetrician-gynecologist (OB-GYN), but practices some dermatology, an area in which he is not board-certified. Assume he is sued for negligently removing a mole from the shoulder of a patient. An interpretation that ignores relevance would require the patient to find an expert who is a board-certified OB-GYN practicing some of the time in dermatology to testify about the standard of care.
A doctor is not required by law to be board-certified in order to practice in a particular area of medicine. An OB-GYN can legally practice as a dermatologist without specialized training in dermatology. Even if an expert witness could be found to testify in the hypothetical case, he would have to testify that no special standard of care exists for an OB-GYN removing moles. His specialized expertise would be useless. A general practitioner, with no board certification, could testify as accurately about the applicable standard of care in the hypothetical case. If the statute were read to account for relevance, he would be allowed to do so.
A blind adherence to matching paper credentials would demonstrate a misunderstanding of the nature of an expert witness’s testimony, which is to determine the reasonableness of the defendant doctor’s conduct. The standard of care the doctor must meet is that of a doctor practicing in the area of medicine involved in the malpractice claim. “[T]he patient normally understands and expects that physicians, acting within the ambit of their professional work, will exercise the skill, *589 knowledge, and care, normally possessed and exercised by other members of their profession, of the same school of practice in the relevant medical community.” 1 Dobbs, Torts, § 242, pp 631-632.
What is important is not the defendant physician’s paper credentials, to the exclusion of all else. It is rather that the expert possesses the same knowledge regarding the applicable standard of care in the area of the alleged malpractice as the defendant doctor should possess. The Legislature recognized that a board-certified doctor may be held to a different standard of care than a doctor who is not board-certified. This is not relevant, however, if the area in which the doctor is board-certified is not related to the malpractice claim.
If the alleged malpractice involves a specialty area, such as dermatology, it is the standard of care applicable to a dermatologist that must be met by the defendant physician. It is not the standard of care of the defendant physician who happens to be a board-certified OB-GYN as well as a dermatologist. See MCL 600.2912a(l)(b).[1] The defendant physician could certainly claim that his separate OB-GYN training influenced his decisions during the treatment. However, it is for the jury to decide whether the defendant breached the standard of care to which he is held, that of a dermatologist. There is no special standard of care for a board-certified OB-GYN practicing in dermatology.[2]
*590 Future defendants, as well as plaintiffs, would be adversely affected by a decision to ignore relevance. The statutory provisions at issue refer to a defendant “against whom or on whose behalf” an expert offers testimony. MCL 600.2169(l)(a). Future defendants practicing outside their area of board certification would be required to find a similarly board-certified standard-of-care expert who is doing the same.
Like a plaintiffs standard-of-care expert, an appropriate witness would be more difficult to find. Once located, if at all, the witness could be asked to testify about an irrelevant standard of care. This would increase the cost and difficulty both of bringing and defending medical malpractice actions. Plaintiffs with a legitimate suit would be adversely affected, and the costs and complexity of defense for doctors and hospitals sued for malpractice would be increased.
Surely, the Legislature did not intend the statute to be read to reach this counterproductive result. What it did intend is that experts in medical malpractice cases be knowledgeable in the medical areas about which they testify. It also intended that courts consider the area of the alleged malpractice in applying the statute and assessing what board certification experts must possess. The statute’s legislative history confirms this belief.
For example, the Report of the Senate Select Committee on Civil Justice Reform stated that the proposed statute was intended “ ‘to make sure that experts will have firsthand practical expertise in the subject matter *591 about which they are testifying.’ ”[3] Judge TAYLOR, now Justice TAYLOR, cited that language in Schanz. The opinion noted:
While MRE 702 authorizes expert testimony on the basis of “knowledge, skill, experience, training, or education,” the statute operates to preclude certain witnesses from testifying solely on the basis of the witness’ lack of practice or teaching experience in the relevant specialty. [Schanz at 24-25 (emphasis added).]
The Legislature’s purpose in writing the expert witness statute is undisputed: it is to ensure that an expert is familiar with the standard of care at the level and in the area in which the malpractice is alleged to have occurred. Creating a rule that requires board certifications to match regardless of whether that area is the subject of the malpractice would not be in keeping with this intent. If the Legislature meant to illogically restrict some medical malpractice causes of action on such an arbitrary basis, it could and would have done so clearly. Because it did not, a contrary interpretation would fly in the face of the intent underlying the statute and, moreover, would produce an absurd result.
CONCLUSION
At issue in this case is the interpretation of MCL 600.2169(l)(a). I would hold that where a defendant specializes in the area of the alleged malpractice, but is not board-certified in that area, the first sentence of MCL 600.2169(l)(a) controls.
Where a defendant is board-certified in the area of the alleged malpractice, the second sentence of MCL *592 600.2169(l)(a) requires that an expert be board-certified in the same specialty. The statute does not require that a board certification unrelated to the occurrence that is the basis for the action be considered.
In this case, the defendant doctor was board-certified in internal medicine. However, it is not disputed that the relevant standard of care involved critical care medicine. Thus, given the arguments at the hearing on defendant’s motion to strike, I would affirm the decision of the Court of Appeals to reverse the trial court’s decision to strike plaintiffs expert.

 MCL 600.2912a(l)(b) states that a plaintiff must prove that “[t]he defendant, if a specialist, failed to provide the recognized standard of practice or care within that specialty . ...”

 I note that, just as the statute does not explicitly use the word “relevant,” it also does not explicitly limit the board certification requirement to the medical field. If the courts were to ignore relevance, a medical doctor who was certified by the State Board of Law Examiners as *590 an attorney must bring forth an expert who is also certified by that board. The same applies to one certified by the State Board of Education as a teacher, and others.

 McDougall v Schanz, 461 Mich 15, 25 n 9; 597 NW2d 148 (1999), quoting McDougall v Eliuk, 218 Mich App 501, 509 n 2; 554 NW2d 56 (1996) (Taylor, J., dissenting) (emphasis added).